Burckle & Gebhard *agt.* Luce.

---

BURCKLE & GEBHARD, Exrs., &c., plaintiffs in error, *agt.* LUCE, defendant in error.

### Questions discussed.

1. Whether, by the death of the plaintiff pending an action of *Replevin*, the action *abates*, and cannot be revived?

2. Where property had been levied upon ·by a sheriff, by virtue of an execution, and by an action of Replevin had been taken from his possession, whether upon the death of the plaintiff, pending the action of Replevin, the sheriff had a right to *retake* the property and sell it on the execution?

3. Whether an *execution* issued pursuant to an order of the court, as a *substitute* for the *original*, which was lost, could properly be introduced and received as *primary* evidence?

The *defendant* was a deputy sheriff of Oswego county, and on the 8th of January, 1840, a *fieri facias*, returnable that month, was delivered to him, on a judgment in the supreme court, in, favor of Philander Rathbun against Christian J. Burckle, for $632.85. On the same day the defendant levied on the property now the subject of controversy, as the property of Burckle. (*See Case*, p. 19.) Charlotte Seitz thereupon brought replevin against the defendant, and the goods in question were delivered to her by virtue of the writ. (P. 18, 19.) That action was tried and a verdict found for the defendant, which was set aside, and a new trial ordered. Afterward, in the month of February, 1842, and before a new trial was had, Mrs. Seitz, the plaintiff in that action, died, having first made her will and appointed the plaintiffs her executors, who proved the will. After the death of Mrs. Seitz, and prior to the commencement of this suit, the defendant repossessed himself of the goods upon which he had previously levied, and which had been taken from him by the first writ of replevin, and claimed to hold them by virtue of that levy. The plaintiffs thereupon, in August, 1842, brought this second action of replevin, and retook the same goods. (P. 19.) On the trial, the judge rejected the evidence which the defendant offered for the purpose of showing that Mrs. Seitz had no title to the property, as against creditors, and directed a verdict for the plaintiffs. This

Burckle & Gebhard *agt.* Luce.

verdict was set aside by the supreme court, and a new trial ordered. (*See* 6 *Hill,* 558.) Another trial was had in July, 1845, at which the jury found the title to the property, so far as creditors were concerned, to have been in Burckle, at the time of the first levy, and rendered a verdict for the defendant. It is to set aside the judgment entered on this verdict that this writ of error was brought.

On the trial, evidence was given tending to show that the original execution was lost after the levy under it. And that a motion was made to the supreme court that a new execution issue under the seal of the court similar to the original, and that such new execution and the endorsement thereon be of the same validity and effect as the original, which motion was granted. And in purusance of this order a new execution was issued, and was offered in evidence on the trial. The plaintiffs' counsel objected to the evidence on the ground that the loss of the original was not sufficiently proved. The judge admitted the execution in evidence, and the plaintiffs excepted.

The counsel for the plaintiffs requested the circuit judge (Hon. P. Gridley) to charge the jury that even although the conveyance by C. J. Burckle to Mrs. Seitz was fraudulent, yet, that the execution of the writ of replevin by Charlotte Seitz in her life time, destroyed the lien of the execution, and that the defendant had no right under that execution to retake the property. The circuit judge refused so to charge, and the counsel for the plaintiffs excepted.

*Duer & Babcock, Attorneys, and*
*Wm. Duer, Counsel* for plaintiffs in error.

(*Arguments and points on both sides submitted by stipulation.*)

The most important question in this case arises from the refusal of the judge to charge the jury as requested by the counsel for the plaintiffs in page 24 of the printed case.

## WE CONTEND,

*First. That the execution of the writ of replevin, brought by Mrs. Seitz, destroyed the lien of the execution, and that, con-*

Burckle & Gebhard *agt.* Luce.

*sequently, the defendant had no right, under that execution, to retake the property.*

The facts briefly are, that the defendant, under an execution against Christian J. Burckle, levied on certain personal property. The property levied on was replevied by Charlotte Seitz, and during the pendency of the replevin suit, Mrs. Seitz died. The defendant then retook the goods.

In favor of the proposition contended for, there appear to be several express decisions, and an absence of all authority on the other side.

The first of these decisions is the case of Bradyll *v.* Ball, (1 *Brown, Ch. R.* 427,) in which it appears to have been expressly decided, after repeated arguments, that there was no such lien either at law or in equity. This decision is confirmed by the cases of Woglam *v.* Cowperthwaite, (2 *Dall.* 68;) Frey *v.* Leeper, (2 *Dall.* 131;) and Acker *v.* White, (25 *Wend.* 614.)

The late chief justice of the supreme court, who delivered the opinion of the court contained in the printed case, (*S. C.* 6 *Hill,* 558,) distinguishes, in two respects, the present case from the cases in *Brown and Dallas:* 1st. That in those cases there was a remedy on the bond—2d. That the rights of third persons had intervened.

Whether there was or was not a subsisting remedy on the bond, does not appear from the reports of the cases in *Dallas.* It appears not to have been supposed, on either side, that the fact would make any difference, as no question on the point was raised by counsel or noticed by the court. But in the case in *Brown* it appears distinctly that there was *no remedy* on the bond; for it is stated that all the parties to it were *bankrupts,* which would be a good defence. This point too appears to have been relied upon, the counsel for the plaintiff being reported to have said, " This is a case where the tenant is a bankrupt, and has no goods; the pledges are also insolvent, *and the sheriff is not liable for taking insufficient pledges,* because, when taken, they were solvent." The want of any other remedy was thus distinctly urged.

It is not perceived, upon principle, how the question whether

there is or is not a remedy on the bond, though it may be a hardship in a particular case, can make any difference *in the law*. At common law the plaintiff was not obliged to give any security; if upon the writ *de retorno habendo* the sheriff returned *elongata* that the goods had been removed or disposed of, the defendant might have a *capias in withernam* for other cattle, &c., and if that failed, his remedy was gone. (1 *Saund.* 195, *a Bac. Abr. Replevin D. id. E.* 5; *Esp. N. P.* 347, *Replevin.*) The security which the statute requires the plaintiff to give, is a pure benefit to the defendant. If, where there is no remedy on the bond, there is a *lien* which authorizes the defendant, on judgment in his favor, to follow the property replevied into the hands of third persons, then at common law, before the statute requiring pledges *de retorno habendo*, there would always have been such a lien. But this is not pretended. Certainly the statute, requiring a bond, gives no lien if .the bond fails. When then, and how did the bond become a substitute for a lien upon the failure of which the lien revives? Not by the common law, for by the common law there was no bond; not by the statute, for the statute that gives the bond creates no lien.

But it is said that in the cases referred to, the rights of third persons had intervened. In the case in *Brown* these third persons were assignees in bankruptcy. Now it is well settled that assignees in bankruptcy take the property subject to all liens, and in the same plight precisely that the bankrupt held it. (1 *P. Wms.* 737; 1 *Atk.* 94–232; *Lempriere* v. *Seyds*, 2 *T. R.* 485; 2 *Vern.* 566; 5 *Barn. & Ald.* 70.) This principle was urged by the counsel for the plaintiffs, and it seems not to have been disputed. "Here we are contending on the same ground as if it were with the tenant himself." "The assignees are liable to all the equity to which the bankrupt would be liable." Either this case is not law, or the law is that the replevin destroys the lien entirely.

In the case of Woglam *v.* Cowperthwaite, goods had been distrained for rent, and were replevied. The defendant obtained judgment, and on the writ *de retorno habendo* the goods were seized by the sheriff: but in the mean time another

landlord had distrained on the same goods, and he brought the suit in question against the sheriff for this taking. Here there was no sale, but a question between two liens acquired in precisely the same manner, and of which that under authority of which the defendant claimed was prior in time. One of the questions in the case was, whether the plaintiff, in consequence of certain irregularities, had not lost *his* lien; and the court, after coming to the conclusion that he had not as against the tenant, continues: "If not defeated as against the tenant, he could not be defeated as against the first distrainor, who had no better right than the tenant himself had, *unless the original lien had continued.*" It will thus be seen that the decision was put upon the ground, not of a paramount title acquired by a third person, but of an entire absence of lien in the first landlord after the replevin.

But if the mere intervention of the rights of third persons destroys the lien, there is such intervention here. The executor may have claims that could not be sustained by his testator. Thus he may treat as void a sale made by the latter, and binding on him, but which is fraudulent as to creditors. (*Babcock* v. *Booth*, 2 *Hill*, 182.) In Dox *v.* Backenstose, (12 *Wend.* 543,) Chief Justice SAVAGE says, that under our present statutes, "executors and administrators have a new character, and stand in a different relation from what they formerly did to the creditors of the deceased persons with whose estates they are entrusted. They are not the *mere representatives* of their testator, or *intestate*—they are constituted trustees, and the property in their hands is a fund to be disposed of in the best manner for the benefit of creditors." These remarks are cited with approbation by BRONSON, Ch. J., in the case immediately before cited.

The chief justice, in his opinion, says: "Mrs. Seitz, without any right to the property—for so we must take the fact to be—obtained the possession by virtue of her writ of replevin. The suit then abated by her death. She only acquired a temporary right to the possession by the replevin; for on a judgment for the defendant, to which he was clearly entitled, he

Burckle & Gebhard *agt.* Luce.

might have a return of the goods. When the writ abated, I do not see why the temporary right of possession which she acquired by it did not fall with it. I admit that third persons, who in the mean time have acquired rights under her, could not be disturbed. But the right of no third person had intervened. The plaintiffs, as executors, have taken her place. They have succeeded to her rights and nothing more. I think the lien of the execution was only suspended by the replevin, and that it revived when the suit abated."

It is not seen why these remarks (*mutatus mutandis*) are not just as applicable to the case of Bradyll *v.* Ball as to the present case, nor why the decision in that case is not a perfect answer to them. The only difference is, that in that case, instead of the suit abating, there was judgment for the defendant and a writ *de retorno* sued out. In that respect this is certainly a stronger case for the plaintiffs; and we only understand the chief justice to contend that the abatement of the suit gives the defendant the same and not other nor greater rights than its determination by a judgment in his favor. The chief justice continues : "Suppose there had been a trial and judgment for the defendant for a return, and *the goods had been actually redelivered to him,* there can be no doubt but that the lien of the execution would have revived, and that the defendant could sell by virtue of the original levy: and why should not the lien revive in the event which has happened?" We doubt not that in the case supposed it would be the right and duty of the officer to sell under the execution, nor that he would have a *lien* on the goods; but the lien, we submit, would be by virtue of the new writ *de retorno habendo.* So far as the argument goes to show that there would be lien on the judgment for a return, and *before* the delivery to the defendant, we may answer the question by another. Why, if this be so, is there any necessity for or use in an execution *de retorno ?* Why may not the defendant, in all cases where he has judgment for a return, (as he has here undertaken to do without such judgment,) retake the property? Yet such a thing was never heard of.

Burckle & Gebhard *agt.* Luce.

When the defendant obtains judgment for a return, he may issue his writ *de retorno*, and if the property still continues in the hands of the defendant, it may be taken and delivered to him. Possibly it might be so taken in the hands of assignees in bankruptcy, or as here of executors; but this would be by the efficacy of the new writ, and not by any revived lien.

There is no warrant in the adjudicated cases for the motion that the replevin only suspends and does not destroy the lien. No one ever supposed that if such a lien continued, its exercise was not *suspended* during the continuance of the replevin suit. The only question that has ever been made, has been whether the lien was merely suspended, or whether it was totally destroyed. That question has always been decided the same way. The case in *Brown* seems to have been an experimental one; for as the counsel for the defendants there remarked, the case must have often happened. And then so little confidence had the counsel in any legal lien, that they sought relief in equity, and were driven to a court of law by the order of the commissioner. And in that court the principle was unanimously affirmed as always before understood and implied, and which seems to flow from the nature and proceedings of the action, that after the replevin there was *no lien*.

This may be considered a case of hardship. Such cases must occur under any system; but for this reason well-established principles are not to be overthrown. The situation of the defendant in replevin is much better than at common law. If the law is still defective, it is for the legislature to amend it. But after all, the judgment creditor still retains his remedy against the debtor. We suppose there is no doubt under the circumstances that the court would allow him to issue another execution. (*Adams* v. *Smith*, 5 *Cowen*, 280.) That he should have done, and he might have levied again on this same property.

If from considerations of hardship the maxim of *stare decisis* should ever be disregarded, there is in this case room for choice. It is said the condition of the bond does not cover the case. The words of the condition are, " that the plaintiff

will prosecute the suit to effect." Apparently the suit brought by Mrs. Seitz was not prosecuted to effect, since, at its termination, matters were left *in statu quo.* We believe no construction has ever been put by the courts of this state upon these words as contained in our statute.

Again it is said that the first replevin suit abated by the death of Mrs. Seitz. There is a decision to that effect in our reports, (*Webber* v. *Underhill,* 19 *Wend.* 447;) but from that decision the chief justice dissented, and the judge who delivered the opinion of the majority of the court, admitted that the question was " rendered difficult" by " the apparent conflict of positive authority."

*Second. If there were any subsisting right to the property by virtue of the levy, yet the plaintiffs, being in possession under process and by authority of law, their possession could only rightfully be changed by the order of the court and under new process; or else (possibly) by the institution of a suit after demand and refusal.*

It is argued that in consequence of the abatement of the first suit, the defendant is in the same position as if he had obtained judgment for a return. But if he had obtained such a judgment, it would not, *per se,* have authorized him to seize the property. It would have been necessary to issue a writ *de retorno.* He should therefore have applied to the court for leave to issue such or some other writ applicable to the case, or to make a second levy *nunc pro tunc.*

*Third. The copy of the execution annexed to Rathbun's deposition was improperly admitted in evidence, there being no legal and sufficient proof either of the loss of the original execution, or of the paper offered being a copy of such original execution.*

### AS TO LOSS.

1. The execution having been traced to the possession either of Judge Gridley or of Joshua A. Spencer, (*Case,* p. 19,) both of these gentlemen should have been called to show its loss. (1 *Phillips' Evid.* 456 ; *Cowen & Hill's Notes,* 1224.)

2. At any rate it should have appeared that a *subpœna duces tecum* was served upon them. (*Ibid.* 1231.)

22

3. A search by *Hamilton Spencer* could not supply the defect; there are a few cases where a thorough search by a third person has been held sufficient, but only where it has been made *under the direction* and with the assistance of him to whom the possession has been traced, and when it has appeared that the witness has had access to all the papers of such person. (*Cowen & Hill's Notes*, 1228.)

4. And even this had been held insufficient. (*Id.* 1226–7.)

5. But there is no legal proof of a search by Mr. H. Spencer. He states, (p. 21,) that he has but an "indistinct recollection" even of Rathbun's calling on him; and the statements of Rathbun on this subject (and so of his inquiries of Judge Gridley) being hearsay, are inadmissible. (*Id.* 1217, 562, 1229, 1226–7; *and Parkins* v. *Cobbet,* 1 *Carr. & Payne,* 282, *and cases there cited.*)

6. The search must be diligent and thorough; of which there is here *no* proof; the only legal evidence being, that the witness (Mr. Spencer) had an "indistinct recollection" of such an occurrence. (*Cowen & Hill's Notes*, 1224, 1229–30.)

7. There are none of those circumstances here, as worthlessness of paper, interest of party having custody to destroy it, or lapse of time, which excuse a less diligent search. (*Id.* 1224.)

### AS TO EVIDENCE OF THE PAPER BEING A COPY.

1. The witness Rathbun does not profess to testify in the slightest degree from any *recollection* of the contents of the original execution and endorsements. The single question is whether the paper is a copy. Rathbun swears (p. 20) in general terms that it is a "copy of said original execution and endorsements;" but he is not to be understood literally; for he swears at the same time that it is a copy of a copy. He means no more than that according to his belief its contents are the same as those of the original execution. Mr. Talcott says it is an exact copy of an alleged copy on which a motion was made for leave to issue a new execution. (P. 21.) From what that was copied, if from anything, there is no evidence. The endorsement of levy is in *defendant's hand-writing,* (p. 20,) and must have been made after the loss of the original, as this

Burckle & Gebhard *agt.* Luce.

was issued in pursuance of the rule of the supreme court, (p. 21,) and there is no evidence of what it is a copy, if of anything. At the most this is the *copy of a copy*. If there were no examined copy or copy from the original *in existence* with which the paper produced was compared, then such paper is in no sense a copy. If there were a copy from the original in existence, that should have been produced. (*Cowen & Hill's Notes*, 1240, *and cases cited; Liebman* v. *Pooley*, 1 *Stark. Rep*. 157.)

2. The only case in which a second copy has been admitted, is where the same person has compared the first copy with the original and the second copy with the first. (*Robertson* v. *Lynch*, 18 *J. R.* 451; *Winn* v. *Paterson*, 9 *Peter's Rep.* 663, *and Cowen & Hill's Notes*, 1240.)

3. The endorsement of levy appears to be in the handwriting of Stephen Luce, the defendant; Luce should have been sworn to verify the copy, and also, under the circumstances, to show loss of original. (*Cowen & Hill's Notes*, 1231–2, 1218.)

4. Even if the paper were admissible as the copy of a copy, there is no such authentication as the law requires. The copyist should have been called, or some person who compared it with the copy, and can speak as to its accuracy. (1 *Phillips' Evid.* 386, *Kearny* v. *Scrope*, 2 *Wald. Rep.* 76; *Cowen & Hill's Notes*, 1065; 5 *Wend. Rep.* 387; *Brewster* v. *Countryman*, 12 *Wend.* 446.)

*Fourth. The order made by the supreme court, and the fact that the execution offered in evidence was issued under such order,* (*Case*, p. 21, 22,) *afford no evidence either of the loss of the original execution, or that the one so offered was a copy.*

We suppose that the intention of the rule of the supreme court was, that for all purposes of future action the execution issued should have the same force as the original.

But the supreme court were of the opinion, on the argument of this case, that it was to be considered *the original*. It may be so by a fiction of the law; but such fictions are never to be allowed to prevail against justice. It manifestly appears in

fact that it is *not* the original. We say no execution was ever issued. It may be true in this case that there was one, and that it was valid. But the principle of the supreme court would prevent us from showing this affirmatively and by the clearest evidence. We cannot be estopped by the rule in question. It was made in another suit and between other parties. This rule, as between the parties to the suit in which it was made, determined a certain fact, namely, that a certain paper was a copy of another. Even a judgment, except as between parties and privies, proves nothing but the fact of its rendition. Can this rule have a higher effect? We admit we are bound by it as an execution from the time it was made. But a claim is set up under a levy made before its existence. It is physically impossible that it can be the original; to make it so in fact is out of human power. If there is no estoppel, what principle is there that prevents us from showing the truth?

It was said on the argument that this point had been several times determined. We are aware that where papers in a suit have been lost, new ones have been allowed to be made out; but we have not found a case where third persons, having rights depending on the existence of the original, have been held estopped from showing the truth.

But if there were any estoppel here, it was waived. The defendant did not offer and rely on his execution as an original. He offered it as a copy, and showed by his own evidence the truth of the case.

If there is no estoppel, then the rule of the supreme court can, of course, have no effect as evidence.

*Fifth. The judge should have charged the jury, as requested by the counsel for the plaintiff, with respect to the question of fraud, (p. 23–4,) and his charge, connected with the refusal to do so, necessarily tended to mislead the jury.*

It will not be denied that in *this* case the whole question as to fraud was for the jury. But the judge refused so to charge—said the proposition was *not universally true*—gave an instance where it was not so, and left the inference open to the jury that it was not true in this particular case. This view was

confirmed by what follows, that it was proper for the court to give the jury "*instructions* as to what had been *regarded by the court* as badges and indicia of fraud, &c." It is the duty of a judge, when requested to charge on a matter of law applicable to the case, either to do or to refuse to do so explicitly; and an evasion that leaves or tends to leave a false impression upon, or to confuse the jury, is matter proper for an exception.

*Talcott & Harmon, Attorneys, and*
*N. Hill, Jr.,* Counsel for Defendant in Error.

*First.* The action brought by Mrs. Seitz abated by her death in February, 1842, and could not be revived.

1. By the common law, all actions of tort, including replevin, abated by the death of the plaintiff, and could not be revived. (*Ormond* v. *Bierly, Carthew's Rep.* 519; *Cutfield* v. *Corney,* 2 *Wils. Rep.* 83; *Miller* v. *Langton,* 1 *Harp. Rep.* 181; *Webber* v. *Underhill,* 19 *Wend.* 449.)

2. The statute has not changed the common law rule, (2 *R. S.* 576, § 2,) but was intended merely as declaratory of the previously existing law. This appears from the notes of the revisers, and from the inconveniences which would arise from any other construction. (3 *R. S.* 786, 2*d ed.* ; *Webber* v. *Underhill,* 19 *Wend.* 447 ; *Burckle* v. *Luce,* 6 *Hill,* 553.)

3. The decisions in Massachusetts on this question are founded upon a statute, which expressly declares, that "when any action or suit shall be depending, &c., and it shall so happen that either party be taken away by death before final judgment, the executor or administrator of such deceased party, who was plaintiff, &c., *in case the cause of action doth by law survive, shall have full power to prosecute, &c., until final judgment.*" (1 *Laws of Mass.,* 122, § 10, *ed. of* 1801.)

4. Our statute is essentially different. It provides for a revival by *scire facias,* where the cause of action survives, in one event only ; viz.: *if the plaintiff shall die after interlocutory judgment.* (2 *R. S.* 386-7, §§ 2, 3; 19 *Wend.* 454-5; 9 *Metcalf,* 440.)

*Second.* The verdict finds that the pretended title of Mrs. Seitz

Burckle & Gebhard *agt.* Luce.

was fraudulent and void, and that she had no property in the goods. Her writ of replevin did not divest the defendant of the lien acquired by virtue of his levy, but merely suspended it, and gave Mrs. Seitz the right of possession during the pendency of the suit. When she died, therefore, and the suit was thus brought to an end, the defendant had the right to retake the property, and proceed with his execution.

1. The action of replevin was not designed, either by the common law or by statute, to enable the person resorting to it to acquire *a title* by the mere act of replevying, but only to enable him to hold *the possession*, while the suit was pending. Indeed, to say that *the title* may be thus changed, would be recognizing the doctrine that a man can be divested of his right without his consent, and without the semblance of a trial, or an opportunity of being heard, which is contrary to first principles. (*Burckle* v. *Luce*, 6 *Hill*, 558; *Lockwood* v. *Perry*, 9 *Metcalf*, 440; 1 *Hill*, 139, *per* BRONSON, J.; 4 *Hill*, 144–5, *per* BRONSON, J.)

*(Manuscript.)*

Fassett & Whitlock sued Yates in replevin for a canal-boat, and took the property by virtue of the writ. Yates pleaded *non cepit*. On the trial, Yates proved the property out of the plaintiffs in that suit and in himself, but could not get a judgment for a return under his plea. Yates afterward, and after a demand and refusal, sued Fassett & Whitlock in *trover* for the canal-boat in question. Fassett & Whitlock set up as defence in that suit, that the property having been taken from Yates by a writ of replevin in their favor, and *no judgment for a return having been rendered in the replevin suit,* that he (Yates) could not maintain an action for the property or its value. But the court decided that Yates could maintain that action, and gave him judgment. (*Yates* v. *Fassett & Whitlock, MS., Old Supreme Court, October Term,* 1847.)

2. The bond to be given by the party replevying, is not a substitute for the property, but a mere security that it shall be safely kept during the pendency of the suit, and restored afterward, if such shall be the judgment of the court. The reason for requiring a bond was, that the writ of replevin took *the possession* from one who was *prima facie* the owner, without trial, and without his consent, and hence it was deemed just that he should have some additional security for its return

Burckle and Gebhard *agt.* Luce.

beyond the responsibility of the party taking it. (9 *Metcalf*, 446, *per* DEWEY, J.; 6 *Hill*, 559 *to* 561; *Wilkinson on Repl.*, 1, 2, 3, 11, 11?; 2 *R. S.* 523–4, § 7, *sub.* 2.)

3. The cases relied on by the plaintiffs in error are not consistent with the true theory and principle of this action. But conceding them to be sound, they go no further than to say, that where replevin is brought for goods distrained, and *a third person acquires rights* under the plaintiff, pending the action, the defendant must, *as against such third person*, proceed to judgment *de retorno habendo*, and then resort to his remedy upon the bond. This is not such a case. (*See* 6 *Hill*, 559, 560.)

4. The defendant had no remedy upon the bond given by Mrs. Seitz upon issuing the writ of replevin; she having died pending the action. (6 *Hill*, 561; 1 *Pick.* 285; *Carthew*, 519.)

*Third.* The circuit judge committed no error in receiving the evidence relating to the execution.

1. The execution introduced was issued pursuant to the order of the supreme court, as a substitute for the first execution, which was lost; and was therefore properly received as *primary* evidence. (*See Case, p.* 20, *Rathbun's Testimony;* 21, *Talcott's Testimony;* 20–1, *Rule of Court.*)

2. The courts have always exercised the power of supplying lost papers in this way, and the substituted paper takes the place of the original, for all purposes. (*Jackson* v. *Hammond*, 1 *Caine's Rep.* 496; *Daysell* v. *Bridge*, 2 *Strange*, 1264; *Douglass* v. *Gallap*, 2 *Burrow's Rep.* 722.)

3. But if the question was one of *secondary* evidence, the proof given was clearly sufficient to show that reasonable diligence had been used to obtain the original, and this is all the law requires. (*See Case, pp.* 19, 20, *Rathbun's testimony;* 21, *Spencer's testimony.*)

4. The law does not require the *utmost* diligence to be shown, in order to excuse the non-production of the original; but only requires evidence of such reasonable diligence as will satisfy the court that a *bona fide* effort has been made to obtain the original, and that it is not withheld through any fraudulent design. (*Cowen & Hill's Notes, pp.* 1223–4, *and the cases there cited.*)

Burckle & Gebhard *agt.* Luce.

5. The testimony requisite to lay the foundation for second-ary evidence, depends upon the circumstances of each par-ticular case. In the present instance, all the preliminary evidence was given *without objection*, and its sufficiency was a *question of fact*, on which the judge has passed. The court will not disturb his decision, even if it were against the pre-ponderance of evidence, which we deny. (*Cowen & Hill's Notes, pp.* 1233–4; 1501.)

6. The judge, in deciding preliminary questions of this character, sits in the place of a jury, and error will not lie, unless he decides *contrary to the evidence*. (*Cowen & Hill's Notes, p.* 1501, *and the cases there cited.*)

*Fourth.* The circuit judge committed no error in charging the jury. He left the whole case to them, with instructions to find whether the assignment was made in good faith, without intent to defraud creditors. Nor did the judge err in refusing to charge the jury as requested. Indeed, it will be seen by an examination of his charge that he substantially complied with the request.

*Fifth.* This being an action against a public officer, for an act done by virtue of his office, the defendant is entitled to double costs.

DECISION.—Judgment affirmed.

JEWETT, Ch. J., delivered the opinion of the court.

NOTE.—*Held*, that the proceedings upon the original writ of replevin con-ferred upon Mrs. Seitz a mere temporary right of possession, which expired with the abatement of the suit by her death, and that when that event occurred, the lien of the execution revived. No rights of third persons having intervened under her, the defendant was at liberty to retake the property by virtue of his former levy.

· The plaintiffs in this (2d) suit as executors succeeded to the rights of Mrs. Seitz, and nothing more.

The action brought by Mrs. Seitz abated by her death, and could not be revived by *scire facias.*

Also *held*, that there was no necessity of proving the loss of the original execution upon the trial in order to give in evidence its substitute ordered by the supreme court.

*Reported* 1 *Comstock,* 163.